IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREGORY GARRETT BROWN,      )
    Petitioner,           )     Civil Action No. 08-319 Erie
                          )
v.                            )     District Judge Sean J. McLaughlin
                          )     Magistrate Judge Susan Paradise Baxter
R.M. LAWLER, et al.,          )
    Respondents.          )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition For a Writ Of Habeas Corpus [ECF No. 26] be denied and that a certificate of appealability be denied.

**II.   REPORT**

Before the Court is Petitioner Gregory Garrett Brown's Petition For a Writ Of Habeas Corpus [ECF No. 26], which he has filed pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

    **A.    Relevant Background**[1]

A criminal complaint was filed against Petitioner in May 2004, and it was eventually docketed in the Court of Common Pleas of Erie County at Criminal Docket No. CP-25-CR-0001748-2004. It charged him with the crimes of Terroristic Threats and Harassment. The charges against him were regarding an incident that took place at the Erie County Prison. The evidence introduced at Petitioner's

---

[1] Respondents have submitted the Common Pleas Court's file and transcripts. The documents contained in the file are numbered 1 through 69 and shall be cited to as "CP Dkt. No. __ ."

1

trial showed that Susan Herbstritt, a licensed practical nurse, was working at the prison when Petitioner was an inmate there. Her duties were to administer medications to the inmates. On May 18, 2004, she asked Petitioner (while he was mopping his cell floor) why he had not taken his vitamin. In reply, he stated to her: "Were you talking to me bitch? I can show you what I can do with this mop." Petitioner also stated that he would: "slash her throat, cut off her head like O.J. did to Nicole Simpson." Herbstritt's testimony was corroborated by John Bink, a corrections officer who witnessed the events. (See CP Dkt. No. 52 at pp. 1-2).

Petitioner's trial initially was scheduled during the September 2004 trial term. A *pro se* colloquy was conducted on August 16, 2004, before the Honorable Fred P. Anthony, to determine whether he could represent himself. As Petitioner had a lawsuit pending against the Erie County Public Defender's Office, Judge Anthony ordered that outside counsel, Bruce Sandmeyer, Esq., be appointed to represent him. Petitioner objected to the appointment and Attorney Sandmeyer filed a Motion to Withdraw. That motion was continued pending the results of a psychological examination in an Order dated September 29, 2004, and the case was rescheduled to be tried during the November trial term.

A status conference was conducted by Judge Anthony on November 15, 2004. In light of the psychological report prepared by psychologist Stephen Riley, the Court determined that Petitioner was not able to cooperate in his own defense. Judge Anthony ordered that Petitioner undergo a psychiatric evaluation and his trial was continued pending the results of the examination.

A competency hearing was scheduled to be held on February 1, 2005. However, that hearing was canceled by Judge Anthony due to his receipt of a threatening letter from Petitioner. Judge Anthony then issued an Order on January 31, 2005, recusing himself from further participation in the case.

The case was then assigned to the Honorable Ernest DiSantis. A competency hearing was conducted by Judge DiSantis on March 8, 2005. At this proceeding, Judge DiSantis reviewed the

2

reports of both Riley and psychiatrist Dr. Sean Su. In addition, he heard brief testimony from Dr. Su. Judge DiSantis concluded that Petitioner was incompetent to stand trial and ordered that he be committed to the forensic unit of Warren State Hospital for treatment.

The court re-convened the competency hearing on July 25, 2005. At this proceeding, the court reviewed the report of Dr. Pathak, Petitioner's attending psychiatrist at Warren State Hospital's Forensic Center. In this report, Dr. Pathak opined that Petitioner still was incompetent to stand trial due to his inability to assist his counsel in preparing a defense. The court accepted the report of Dr. Pathak and issued an order re-committing him to Warren State Hospital.

The matter of Petitioner's competency was again addressed by the court on October 31, 2005. At that time, Judge DiSantis reviewed a new report authored by Dr. Pathak. In it, Dr. Pathak wrote that in light of the treatment received by Petitioner, he now was competent to stand trial. An Order was issued on November 1, 2005 which held that: (1) Petitioner was competent to stand trial; (2) he could represent himself; and (3) Attorney Sandmeyer would serve as stand-by counsel.

Petitioner's trial was held on November 14, 2005. The jury found him guilty of the crime of Terroristic Threats and Judge DiSantis found him guilty of the summary offense of Harassment. Judge DiSantis sentenced him on January 20, 2006, to a term of incarceration of 21-42 months on the Terroristic Threats conviction. The sentence for the Harassment conviction was merged.

Petitioner did not file a direct appeal with the Superior Court of Pennsylvania.

On August 21, 2006, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he alleged that: (1) the victim lied at trial; (2) the trial court had no jurisdiction over him; and, (3) he was arrested without probable cause. (See CP Dkt. Nos. 37, 43, 44). The PCRA Court appointed Tina M. Fryling, Esq., to represent him. She subsequently filed a "no merit" letter with the court, in which she requested permission to withdraw as

counsel because she had concluded that all of Petitioner's claims were frivolous. (CP Dkt. No. 43). The PCRA Court granted her motion and it filed a Notice of Intent to Dismiss Without Hearing Pursuant to Pa.R.Crim.P. 907(1). (CP Dkt. No. 44). A final Order denying the PCRA petition was issued by the Court on January 8, 2007.

Petitioner filed a timely appeal to the Pennsylvania Superior Court. In it, he alleged that: (1) there was insufficient evidence to prove the elements of the crimes charged; (2) the jury's verdict was against the weight of the evidence; (3) the verdict and the court's order of sentence was illegal; (4) the trial court erred and abused its discretion in sentencing him; and, (5) the trial court wrongfully instructed the jury. (CP Dkt. No. 50; see also CP Dkt. No. 52, PCRA Court's 1925 Opinion).

The Superior Court affirmed the PCRA Court's decision in a Memorandum dated November 19, 2007. It held that, with the exception of Petitioner's challenge to the legality of his sentence, the issues raised on appeal were waived since he had not raised them in his PCRA petition, and also because he could have raised them, but did not, on direct appeal. The Superior Court then reviewed Petitioner's challenge to the legality of his sentence and rejected it on the merits. (CP Dkt. No. 56, Commonwealth v. Brown, No. 215 WDA 2007, slip op. (Pa.Super. Nov. 19, 2007)).

Petitioner filed a second PCRA petition on December 19, 2007, in which he once again claimed that the trial court did not have jurisdiction over him. Under Pennsylvania law, a second or subsequent petition for PCRA relief "will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." See Commonwealth v. Burkhardt, 833 A.2d 233, 236 (Pa.Super. 2003) (internal quotations and citations omitted). In an Order dated December 20, 2007, the PCRA Court held that Petitioner failed to establish that he is entitled to consideration of a second petition. (CP Dkt. No. 59). According to Respondents, Petitioner's subsequent appeal to the Superior Court was dismissed for failure to file a brief.

4

Petitioner filed a third PCRA petition on April 14, 2009. (CP Dkt. No. 62). In this petition, he contended that: (1) the District Attorney and judge violated his natural rights; (2) he is entitled to forgiveness due to his natural rights; and (3) he is entitled to compensation for his unlawful arrest. The PCRA Court denied this third petition in an Order dated April 29, 2009, in which it concluded once again that Petitioner failed to demonstrate that he was entitled to consideration of a subsequent PCRA petition. (CP Dkt. No. 63). According to Respondents, Petitioner did not pursue an appeal to completion.

Presently before this Court are Petitioner's three claims for federal habeas corpus relief: (1) he suffers from serious mental illnesses and therefore should not be incarcerated; (2) he is entitled to forgiveness to due to his natural rights; and, (3) the District Attorney's Office and judge violated his natural rights. [ECF No. 26 at pp. 5-9].[2] As relief, he seeks an immediate release from custody or an order directing that he be sent to Warren State Hospital for treatment. [ECF No. 26 at p. 15].

The District Attorney's Office of Erie County has filed the Respondents' Answer [ECF Nos. 29-31], to which Petitioner filed a Reply on February 18, 2011 [ECF No. 37]. On March 3, 2011, he filed a Memorandum Of Law In Support Of His Reply [ECF No. 38]. The case is now ripe for review.

### B. Discussion

28 U.S.C. § 2254 provides that a federal habeas court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

---

[2] Because it appeared to this Court that this habeas proceeding was duplicative of one that Petitioner was litigating before this Court at Civil Action No. 08-312, this case originally was dismissed. [ECF Nos. 12, 15]. Petitioner clarified in his subsequent appeal before the U.S. Court of Appeals for the Third Circuit that the instant case and the case at Civil Action No. 08-312 were regarding different criminal convictions. Therefore, in June 2010 the Court of Appeals remanded this case for further proceedings. [ECF No. 24].

5

Since there are no applicable federal laws or treaties in this case, Petitioner may only challenge the legality of his custody on the ground that it is violative of the Constitution. His second and third claims are premised upon violations of his "natural" rights, which he sometimes refers to as his biblical rights. In support of these claims, he cites to or quotes from Thomas Jefferson, the Bible, a Kentucky resolution, an Inaugural address from 1805, a letter from 1808, an executive order by Abraham Lincoln, international law, and various Catholic guides. [ECF No. 26 at pp. 16-20 and ECF No. 38]. These claims do not implicate his Constitutional rights and they should be denied because they are not cognizable under the federal habeas statute.

It also appears that Petitioner's remaining mental health claim is not cognizable. In habeas proceedings, a state prisoner challenges the "validity of the continued conviction or the fact or length of the sentence." Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). See also Nelson v. Campbell, 541 U.S. 637, 643 (2004); Preiser v. Rodriguez, 411 U.S. 475 (1973). "Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [42 U.S.C.] § 1983 is appropriate." Id. Here, Petitioner contends that he suffers from "a multitude of mental illnesses," including bipolar disorder, schizophrenia, major depression, and acute psychosis. He is not challenging his underlying judgment of sentence. Instead, he contends that he should not be confined in a prison due to his mental illnesses. In support of this claim, he cites to reports that are published on the Human Rights Watch's website. He also uses phrases such as "deliberate indifference" and "inadequate mental health treatment." [ECF No. 26 at p. 5].

Because Petitioner is incarcerated subject to a valid judgment of sentence that is not being challenged, there is no basis for this Court to grant him the habeas relief, which would be an order directing that he be released from Respondents' custody. Moreover, this Court has no authority sitting in habeas to order that he be transferred to a Warren State Hospital for medical treatment. Therefore,

because it appears that in actuality Petitioner is challenging his conditions of confinement, his mental health claim is not cognizable under 28 U.S.C. § 2254 and should be dismissed.

In the alternative, even if any of Petitioner's claims could be read to state a cognizable federal habeas claim, each of them are subject to dismissal because he failed to exhaust them. 28 U.S.C. § 2254 provides that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner first has exhausted the remedies available in the state courts. See, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), citing 28 U.S.C. § (b)(1)(A). Exhaustion "addresses federalism and comity concerns by 'affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Parker v. Kelchner, 429 F.3d 58, 61 (3d Cir. 2005), quoting Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), which quoted Vasquez v. Hillery, 474 U.S. 254, 257 (1986). In order to exhaust a claim, a petitioner must "fairly present" it *to each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

As set forth above, Petitioner did not fully exhaust any of the claims that he raises in the instant federal habeas petition. Since he failed to do so, his claims now are "procedurally defaulted." Like the exhaustion doctrine, the procedural default doctrine is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and it applies to bar federal habeas relief when a state court has declined or would decline to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement (*i.e.*, failed to raise them at the proper time). See, e.g., Whitney v. Horn, 280 F.3d 240, 381 (3d Cir. 2002); Lines, 208 F.3d at 166 (when exhaustion of a claim

now would be futile because the state court would deem it to be waived or untimely, the claim is procedurally defaulted for federal habeas review).[3]

Based upon all of the forgoing, Petitioner's claims should be denied because they are not cognizable in federal habeas. In the alternative, each of his claims should be denied because they are procedurally defaulted.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would

---

[3] A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner points to no evidence and makes no allegation concerning cause for his default or prejudice stemming therefrom, as is his burden. Id.
Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. It is not applicable to Petitioner's case.

not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition For Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 7, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge